## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL B. MEADE, | Civil No. 3:16-cv-2212 |
| Petitioner | (Judge Mariani) |
| v. | |
| CAPTAIN S. SPAULDING, | |
| Respondent | |

## MEMORANDUM

Petitioner Michael B. Meade ("Meade"), an inmate presently confined at the Allenwood Federal Correctional Institution, in White Deer, Pennsylvania ("FCI-Allenwood"), filed this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Named as the Respondent is Warden Spaulding. Meade seeks federal habeas corpus relief on the basis that the United States Parole Commission (the "Commission") violated his due process rights when it conducted his revocation assessment and determined he would not be eligible for re-parole until he served a term of sixty months. (Doc. 1).

### I.  Background

On August 7, 2000, Meade was sentenced by the District of Columbia Superior Court to a term of imprisonment of eight to twenty-four years for assault with a dangerous weapon and assault with intent to commit first degree sexual abuse.[1] (Doc. 6-1, pp. 4-7,

---

[1] District of Columbia offenders, such as Meade, are considered state prisoners for purposes of the federal habeas corpus statute. *See Madley v. United States Parole Comm'n*, 278 F.3d 1306, 1309

Sentence Monitoring Computation Data). On December 21, 2011, Meade was released on parole supervision, and was to remain under parole supervision until September 20, 2025. (Doc. 6-1, pp. 8-10, Certificate of Parole).

By letter dated December 22, 2014, the Commission was informed that Meade tested positive for marijuana, was arrested for driving under the influence, released on bond, then arrested again for aggravated assault with a deadly weapon and related offenses. (Doc. 6-1, pp. 11-24, Letter from United States Probation Officer and Attachments). Therefore, on December 23, 2014, the Commission issued a warrant charging Meade with violating the conditions of his parole on the charges of driving under the influence of alcohol, reckless driving, assault, assault on a police officer, and possession of a firearm. (Doc. 6-1, pp. 25-29).

By letter dated May 28, 2015, the Commission was informed that Meade pleaded guilty to obstruction of law enforcement and possession of a firearm by a convicted felon, and was sentenced to a five year term of imprisonment in the Fulton County, Georgia, Superior Court. (Doc. 6-1, pp. 30-38, Letter and Attachments). On July 9, 2015, the Commission supplemented its warrant with the information regarding these convictions. (Doc. 6-1, p. 39, Supplement to Warrant Application).

On December 20, 2015, Meade was taken into custody on the Commission's

---

(D.C. Cir. 2002).

warrant. (Doc. 6-1, p. 40, Warrant Return). By letter dated December 28, 2015, the Commission requested that the United States Probation Office for the Southern District of Georgia conduct a preliminary interview. (Doc. 6-1, pp. 41-42, Letter).

On December 30, 2015, the Probation Office conducted a preliminary interview. (Doc. 6-1, pp. 43-53, Summary Report of Preliminary Interview). The probation officer recommended that the Commission find probable cause as to both charges, driving under the influence and reckless driving (count one), and possession of a firearm by a convicted felon and obstruction (count two). (*Id.*).

On May 11, 2016, the Commission conducted a parole revocation hearing. (Doc. 6-1, pp. 54-63). The Commission found that Meade violated the conditions of his parole on charge two, possession of a firearm and obstruction, and made no finding on charge one. (*Id.*). The Commission revoked parole, and ordered that Meade receive no credit for time spent on parole. (*Id.*). The Commission also ordered that Meade serve sixty months prior to re-parole. (Doc. 6-1, pp. 64-66, Notice of Action). This decision represented a departure above the re-parole guideline range of eighteen to twenty-four months. The Commission provided the following reasons for its decision above the guidelines:

> Your parole violation behavior has been rated as criminal conduct of Category 3 severity because it involved: Possession of a Firearm by Convicted Felon (Conviction); Obstruction of a Law Enforcement Officer (3 counts) (Conviction). Your salient factor score is 5 . . . . As of April 19, 2016, you have been in confinement as a result of your violation behavior for a total of 15 month(s). Guidelines established by the Commission indicate a

customary range of 18-24 months to be served before release.

After consideration of all relevant factors and information presented, a decision above the guidelines is warranted because you are a more serious risk than indicated by your guidelines in that you have a history of violence and weapons involving law enforcement during the course of their duties.

(Doc. 6-1, p. 65).

Meade filed an administrative appeal of this decision. (Doc. 6-1, pp. 67-103, Appeal). On November 25, 2016, the National Appeals Board affirmed the Commission's decision. (Doc. 6-1, pp. 104-05, Notice of Action on Appeal).

## II. Standard of Review

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmate of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *see also Ellis v. District of Columbia*, 84 F.3d 1413 (D.C. Cir.1996) (the District of Columbia parole statute and regulations do not create any liberty interest in parole). Even though a convicted person has no liberty interest in parole protected by the Due Process Clause, a fundamental due process right to be free from "capricious decision making" protects parole applicants from being denied parole for "arbitrary or constitutionally impermissible reasons." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980).

The D.C. Code and D.C. regulations establish that parole decisions are within the discretion of the Parole Commission. *See* D.C. Code 24-404(a) (stating that when a

4

prisoner meets certain criteria, "the Commission *may* authorize his release on parole") (emphasis added); D.C. Mun. Regs. Tit. 28 § 200.1 ("In accordance with D.C. Code § 24-204 the Board shall be authorized to release a prisoner on parole in its discretion . . .").

The District Court's review of such a decision is "not whether the [decision of the] Board is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Board's conclusions embodied in its statement of reasons." *Zannino v. Arnold*, 531 F.2d 687, 691 (3d Cir. 1976); *see also Furnari v. Warden, Allenwood Fed. Corr. Inst.*, 218 F.3d 250, 254 (3d Cir. 2000). "To this end, 'the Commission may not base its judgment as to parole on an inaccurate factual predicate.'" *Furnari*, 218 F.3d at 254 (citing *Campbell v. United States Parole Comm'n*, 704 F.2d 106, 109 (3d Cir. 1983)). However, the Commission may consider, *inter alia*, hearsay, counts of an indictment that have been dismissed, and information in a separate dismissed indictment. *See Campbell*, 704 F.2d 109-110.

The appropriate remedy when the Commission exceeds its discretion is to remand the matter to the agency for further proceedings consistent with the court's opinion. *See Mickens-Thomas v. Vaughn*, 355 F.3d 294, 309-10 (3d Cir. 2004) (citing *Bridge v. United States Parole Comm'n*, 981 F.2d 97, 105 (3d Cir. 1992)).

## III. Discussion

### A. Administrative Appeal

Meade claims that the Commission violated his due process rights when it did not timely decide his administrative appeal. (Doc. 1, p. 7; Doc. 9, pp. 1-4). Pursuant to the Parole Commission and Reorganization Act of 1976, 18 U.S.C. §§ 4201-4217(1976), the National Appeals Board is required to decide administrative appeals within sixty days of receipt of the appellant's papers. 18 U.S.C. § 4215(b). The record reflects that the Parole Commission received Meade's appeal on August 10, 2016. (Doc. 6-1, p. 67). The Board decided Meade's appeal on November 25, 2016. (Doc. 6-1, pp. 104-05). It is clear that the Board did not decide Meade's appeal within sixty days. Instead, the appeal was decided approximately forty-six days late.

In a parole setting, the Court must apply "a two-pronged test to determine whether to grant the habeas petition because of delay: first, whether the delay was unreasonable; and second, whether the delay was prejudicial to a legally protected interest." *Maslauskas v. United States Bd. of Parole*, 639 F.2d 935, 938 (3d Cir. 1980) (a due process claim based upon delay in conducting a parole hearing pursuant to 18 U.S.C. § 4214 requires a showing both of an unreasonable delay and actual prejudice to the petitioner) (citations omitted). Thus, to be entitled to habeas relief, a petitioner must establish unreasonable delay and actual prejudice resulting from that delay. *See Northington v. United States Parole*

Comm'n, 587 F.2d 2, 3-4 (6th Cir. 1978) (finding no prejudice from a twenty-four day delay in holding a parole revocation hearing). Furthermore, prejudice requires a showing of a specific and articulable harm to the alleged parole violator in preparing or presenting his defense to the revocation charges. See Cortinas v. United States Parole Comm'n, 938 F.2d 43, 45 (5th Cir.1991) (petitioner failed to assert that his ability to present facts or contest the violation was affected by the delay).

Here, Meade has failed to establish any prejudice resulting from the National Appeals Board's delay in deciding his administrative appeal. Although the National Appeals Board decided Meade's appeal approximately forty-six days beyond the statutory target date, the delay was not so extensive as to be unreasonable. As such, the Court will deny Meade's due process claim to the extent that it rests upon the National Appeals Board's minor delay in deciding his appeal.

### B. Void judgment

Meade next contends that the Commission used a "void" judgment to revoke his parole and set a parole date outside the re-parole guidelines. (Doc. 1, p. 7; Doc. 9, pp. 4-7). There is simply no evidence that Meade's Fulton County, Georgia judgments were "void." See State of Georgia v. Meade, Nos. 16CR012764E, 15SC131755 (available at: htttps://publicrecordsaccess.fultoncountyga.gov/Portal). As such, the Court will deny this claim.

## C. The Commission's Departure from the Guidelines

Meade alleges that the Commission impermissibly double-counted his prior offense and his parole violation offense to render a sentence above the guidelines. (Doc. 1, p. 7; Doc. 9, pp. 8-10).

Pursuant to 18 U.S.C. § 4206(c), in making parole determinations for federal offenders, the Commission is required to specify "good cause" when it grants or denies parole notwithstanding the guidelines. "Double-counting" describes the practice whereby the Commission considers the same factors as a basis for "good cause" to depart from the guidelines that it used either to place the inmate in a particular severity category or to calculate his Salient Factor Score, or both. *See Muhammad v. Mendez*, 200 F.Supp.2d 466, 472 (M.D. Pa. 2002) (citing *Malik v. Brennan*, 743 F.Supp. 639, 644 (W.D. Wis. 1990)).

However, Meade is not a federal offender. Rather, he is a District of Columbia offender and the District of Columbia parole statute does not contain any similar provision to 18 U.S.C. § 4206(c). *Compare* 18 U.S.C. § 4206(c) *with* D.C. Code § 24-404. Because 18 U.S.C. § 4206(c) does not apply to Meade, and it does not appear that the Commission used § 4206(c) in making his parole determination, the double-counting ban does not apply. Assuming *arguendo* that the double-counting ban applies, Meade's claim lacks merit. Meade claims that the Commission improperly considered his prior offense and his parole violation offense in deviating from the guidelines. However, the Commission is required to

assess whether a D.C. offender is suitable for parole release by considering, *inter alia*, whether he is capable of living in the community without committing new crimes and without jeopardizing the public welfare. D.C. Code § 24-404(a). In making that determination, the Commission considers the nature and circumstances of a petitioner's current and prior offenses. In the instant case, the Commission explicitly stated that Meade is a "more serious risk than indicated by your guidelines in that you have a history of violence and weapons involving law enforcement during the course of their duties." (Doc. 6-1, p. 65). On appeal, the National Appeals Board found that Meade's behavior indicated a willingness to arm himself with a weapon, disregard for the criminal justice process, and disregard for those trying to maintain order and protect the community. (Doc. 6-1, p. 104). It appears that the Commission did not abuse its discretion, and articulated a rational basis for its determination to depart from the guideline range because Meade committed new crimes and jeopardized the public welfare. Accordingly, this claim will be denied.

### D. Equal Protection Claim

Meade claims that the Commission violated his right to equal protection when it rendered a re-parole decision in his case that was not consistent with "prior decisions rendered in similar cases." (Doc. 1, p. 7; Doc. 9, pp. 10-12). The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. This is not a command that all persons be treated

alike but, rather, "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (emphasis added). Since there are no facts showing that Meade was treated differently than any similarly situated prisoners, a viable equal protection claim has not been stated. Morever, to the extent that Meade references other cases where inmates were granted parole, the Commission makes each parole decision on a case by case basis, and prisoners have no guarantee that parole will ever be granted. The Court will deny habeas relief on this claim.

### E. The Commission's Decision was Supported by the Facts in the Notice of Action

Meade argues that the Commission's decision was not supported by the facts in the Notice of Action. (Doc. 1, p. 8; Doc. 9, pp. 10-12). The Commission must provide a "formal statement of reasons" for its decision that "must reveal reasoning, and not simply present conclusions, at least where that reasoning is not apparent from the facts of the case." *Marshall v. Lansing*, 839 F.2d 933, 942-43 (3d Cir. 1988); *see also* 18 U.S.C. § 4206(b) (requiring the Commission to provide a "written notice" of its determination that "state[s] with particularity" its reasons for denying parole). The Notice of Action made it clear that the Commission's decision to revoke Meade's parole and impose special conditions was based on his violent criminal history involving law enforcement during the course of their duties. (Doc. 6-1, pp. 64-65). The Commission revealed its reasoning, and did not simply present

10

conclusions. (*Id.*). As such, Meade is not entitled to habeas relief on this claim.

**F.    The Commission's Decision was not based on Erroneous Information**

Meade claims that the Commission's decision "was based on erroneous information and the actual facts justify a different decision." (Doc. 1, p. 8; Doc. 9, pp. 13-14). With respect to this claim, Meade challenges his underlying criminal conviction in Fulton County, Georgia. (Doc. 9, pp. 13-14). He argues that the Fulton County Court violated his constitutional rights, the criminal documents used in that case were fraudulent, the police reports were illegally altered, and he was coerced to enter a guilty plea. (*Id.*). It is well-settled that a parole revocation hearing may not be used to "relitigate issues determined against [the parole violator] in other forums, as in the situation presented when the revocation is based on conviction of another crime." *Razzoli v. United States Navy*, 248 F. App'x 473, 475 (3d Cir. 2007) (citing *Morrissey v. Brewer*, 408 U.S. 471, 492 (1972)). Meade has presented no evidence to establish that his underlying conviction is not valid. Because Meade has failed to establish that the Commission's decision was based on erroneous information, this claim will be denied.

**G.    Revocation Hearing**

Meade claims that the Commission violated its own regulations, and his right to due process when it did not provide him with a local revocation hearing. (Doc. 1, p. 8; Doc. 9, pp. 14-17). Pursuant to the Commission's regulations, when a parolee has violated the

conditions of parole by receiving a new conviction while on parole, he is not entitled to a local revocation hearing, but rather to an institutional hearing, because the fact of the conviction establishes his violation of parole as a matter of law. See 28 C.F.R. § 2.102(a)(1) (providing that a local revocation hearing may be requested by parolee who "has not been convicted of a crime committed while under supervision"). The Commission found that Meade violated the conditions of his parole when he was convicted of possession of a firearm by a convicted felon and obstruction of a law enforcement officer. (Doc. 6-1, p. 64) (citing Fulton County, Georgia, Superior Court Case No. 15SC131755). As such, the Court will deny Meade's claim that the Commission violated its own regulations and his right to due process when it did not provide him with a local revocation hearing.

Meade also argues that the Commission did not conduct a revocation hearing within ninety days of his arrest on the Commission's warrant. As stated *supra*, in order to establish that any delay in holding his parole hearing was a violation of his right to due process, Meade must allege that the delay was both unreasonable and prejudicial. See *Maslauskas*, 639 F.2d at 938. The relevant statute provides that an alleged parole violator "shall receive a revocation hearing within ninety days of the date of retaking." 18 U.S.C. § 4214(c). The record reflects that Meade's retaking occurred on December 20, 2015. (Doc. 6-1, p. 40). The revocation hearing was held on May 11, 2016. (Doc. 6-1, pp. 59-60). It is clear that Meade's hearing was not conducted within ninety days of his arrest on the

Commission's warrant.

The Court finds that Meade's delay of approximately two months was not *per se* unreasonable, and he fails to allege that this delay caused him prejudice. *See Morrisey*, 408 U.S. at 487-90 (finding that a delay of two months in holding a parole revocation hearing was not unreasonable). "[P]rejudice requires a showing of a specific and articulable harm to the alleged parole violator in preparing or presenting his defense to the revocation charges by the loss of witness or evidence as a result of the delay." *Mowatt v. Ebbert*, 2011 WL 1877639, at *8 (M.D. Pa. Mar. 15, 2011) (citing *Cortinas*, 938 F.2d at 45). A mere speculative assertion that the alleged parole violator could have called exculpatory witnesses is insufficient to establish prejudice. *See Maslauskas*, 639 F.2d at 938. Meade contends that certain witnesses were willing to testify at his revocation hearing. (Doc. 9, pp. 16-17). Meade does not allege that these witnesses were missing or unavailable due to the delay in holding the hearing. (*Id.*). Instead, he argues that he was "disadvantage[d]" because the witnesses were located in Georgia, and his revocation hearing was held in Pennsylvania. (*Id.*). There is no indication that these purported witnesses were no longer available to testify at the revocation hearing on May 11, 2016. (*Id.*). In fact, it appears that Meade had the opportunity to present evidence on his own behalf at the revocation hearing. (Doc. 6-1, p. 59-60).

Meade has failed to establish an unreasonable delay with respect to the timing of his

revocation hearing. Nor has he shown any specific or articulable harm from the slight delay in holding his parole revocation hearing. Because Meade has failed to establish either element required for a finding of a due process violation, the Court will deny habeas relief on this ground. See Maslauskas, 639 F.2d at 938.

## H. The Commission did not Act Arbitrarily and Capriciously

Meade argues that the Commission acted in an arbitrary and capricious manner when it imposed the special sex offender aftercare condition without considering testimony from the victim in his original District of Columbia case. (Doc. 1, p. 8; Doc. 9, pp. 17-18). Meade acknowledges that this victim never testified in his underlying criminal case, and continues to argue that he did not sexually assault the victim. (Id.). However, a parole hearing is not the proper venue to re-litigate issues of innocence of the underlying criminal convictions. See, e.g., Furnari, 218 F.3d at 254 ("A parole hearing is not a trial-like adversarial proceeding."); see also Moore v. Spaulding, 2015 WL 10436111, at *4 (M.D. Pa. 2015) (citing Jones v. Swarthout, 2012 WL 2499955, at *3 (E.D. Cal. June 27, 2012)). Therefore, the Commission was not required to obtain testimony from the victim, who never testified in Meade's underlying criminal case.

Furthermore, the Commission imposed the special sex offende condition based on Meade's conviction of assault with intent to commit first degree sexual abuse. (Doc. 6-1, p. 4). The Parole Commission "has broad discretion in the materials it can consider in making

14

parole decisions." *Furnari v. United States Parole Comm'n*, 125 F. App'x 435, 437 (3d Cir. 2005). The Commission may consider "official reports of the prisoner's prior criminal record" in making its parole determination. 18 U.S.C. § 4207(2). In fact, parole officials may even rely upon wholly unadjudicated criminal conduct when making parole decisions. *See Arias v. United States Parole Comm'n*, 648 F.2d 196, 200 (3d Cir. 1981). Thus, in light of Meade's conviction of assault with intent to commit first degree sexual abuse, the Commission's decision requiring Meade to participate in a special sex offender program was not arbitrary and capricious. *See* 28 C.F.R. § 2.85(b) (The Commission "may impose a [special] condition . . . if [the Commission] determine[s] that imposing the condition is reasonably related to the nature and circumstances of your offense or your history and characteristics . . . [and that such condition is necessary] for protection of the public from further crimes"); 28 C.F.R. § 2.204(b)(1). Because Meade failed to establish that the Commission acted in an arbitrary and capricious manner, the Court will deny habeas relief on this claim.

I.     **Other Constitutional Claims**

Meade generally asserts that the Commission violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights by making "adverse decisions stemming from a sex offense the victim clearly claimed never happened." (Doc. 1, p. 8; Doc. 9, pp. 19-23). With respect to these claims, Meade continues to argue that he is innocent of the underlying criminal

15

charge of assault with intent to commit first degree sexual abuse. (*Id.*). It is clear that Meade's conviction for assault with intent to commit first degree sexual abuse is valid and has been upheld on appeal. *See Meade v. United States*, 48 A.3d 761 (D.C. 2012). Meade has thus failed to state any constitutional claims upon which relief may be granted.

## IV. Certificate of Appealability

Because Meade is in custody by virtue of a District of Columbia judgment, he is regarded as a state prisoner for habeas corpus purposes and, therefore, must obtain a certificate of appealability to pursue an appeal. *See Wilson v. United States Parole Comm'n*, 652 F.3d 348 (3d Cir. 2011). Meade has not made a substantial showing of the violation of a constitutional right in connection with the adverse parole decision. As such, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2).

## V. Conclusion

Based on the foregoing discussion, the petition for writ of habeas corpus will be denied. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: May 17, 2019